# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CR-00015-R-3

UNITED STATES OF AMERICA                               PLAINTIFF

v.

DANOIS LAMOND ALLEN                                  DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant's Motion to Suppress Wiretap Evidence and Motion for Suppression Hearing (DN 328). Plaintiff has responded (DN 349), and Defendant has replied (DN 357). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

On July 14, 2009, Defendant Danois Lamond Allen and twenty other individuals were named in a superceding indictment ("Indictment"). Count One of the Indictment alleges that Allen and the other defendants conspired to knowingly and intentionally distribute and possess with intent to distribute fifty grams or more of cocaine base, commonly known as "crack."

As evidence of Allen's involvement in the conspiracy, the Government has recorded telephone conversations between Allen and co-conspirator Demetrius Williams. These conversations took place between October 28, 2008, and November 8, 2008, pursuant to a Title III order authorizing the wiretap of "Target Telephone-1" ("October 24 Wiretap").

Allen now seeks to suppress these conversations. He also requests a suppression hearing. Specifically, Allen argues that (1) the Government failed to properly minimize communications over Target Telephone-1, (2) the Government failed to establish probable cause for continued interception of Target Telephone-1 after October 29, 2008, and (3) the Government violated the

sealing requirement by failing to immediately seal the intercepted communication and by breaking the chain of custody.

## ANALYSIS

**A.     Minimization**

Title III of the Omnibus Crime Control and Safe Streets Act ("Federal Wiretap Act"), 18 U.S.C. §§ 2510, et seq., sets forth standards and procedures for the use of electronic surveillance, as well as criminal and civil penalties for the violation of the Act.  Section 2518(5) requires that surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception."  To evaluate compliance with this minimization requirement, a court should "objectively assess the reasonableness of the monitoring agents' actions in light of the facts and circumstances confronting them at the time."  *United States v. Feldman*, 606 F.2d 673, 678 (6th Cir. 1979) (citing *Scott v. United States*, 436 U.S. 128 (1978) (articulating appropriate standard for determining whether monitoring agents have complied with the minimization requirements of Title III)).  The focus of the court's inquiry should be on the agents' actions in conducting the surveillance, not their motives or intent.  *Id.*

*1.     Minimization Post-October 29, 2008*

Allen contends that the necessity for the October 24 Wiretap was to discover the new telephone number which Williams was using to conduct drug activity.  According to the November 18, 2008, Affidavit in Support of Application for Authorization to Intercept Wire Communications ("November 18 Affidavit"), agents obtained this number on October 29, 2008.  The Court's October 24, 2008, Order Authorizing the Interception of Wire Communication ("October 24 Order") requires that "interception of wire communication must terminate upon

attainment of the authorized objectives, or, in any event, at the end of thirty (30) days, measured from the day on which the investigative or law enforcement officers first begin to conduct the interception under the Court's Order or ten (10) days after the Order is entered, whichever is earlier." Therefore, Allen argues that any calls after October 29, 2008, should have been minimized.

To support his contention that the necessity of the wiretap was to discover the new telephone number which Williams was using to conduct drug activity, Allen cites the October 24, 2008, Affidavit in Support of Application for Authorization to Intercept Wire Communications ("October 24 Affidavit") submitted by Drug Enforcement Administration ("DEA") Special Agent Daren L. Atkins. In particular, Allen cites paragraph fifty-two, the first paragraph under the section titled "Necessity":

> I believe the facts revealed throughout this investigation indicate Demetrius WILLIAMS is likely utilizing an additional telephone, not yet identified by law enforcement, to conduct his illegal drug trafficking. My belief is based on toll analysis comparing Demetrius WILLIAMS' previous telephone (270) 839-0390 activity to the **Target Telephone** (270) 987-1947 activity. Toll analysis indicates that numerous **Target Subjects** were in frequent contact with Demetrius WILLIAMS utilizing his listed telephone (270) 839-0390, but now have no, or minimal, contact with Demetrius WILLIAMS utilizing the **Target Telephone**.

The remainder of the paragraph compares the number of calls between Williams and target subjects on his previous phone number and Target Telephone-1.

The October 24 Affidavit, however, contains three additional paragraphs under the "Necessity" section that Allen fails to cite. They provide:

> 53. Based on my training and experience, as well as the experience of other Special Agents of the DEA and other federal, state, and local officers with whom I have consulted, and based upon all the facts set forth therein, it is my belief that the interception of wire communications over the **Target**

3

> **Telephone**, as requested herein, is the only available technique that has a reasonable likelihood of securing the evidence necessary to prove beyond a reasonable doubt that the **Target Subjects** and other yet unknown are engaged in the above described offenses. Based on the investigation, I believe that the **Target Subjects** and others yet unknown are members of a cocaine distribution organization which obtains large quantities of cocaine from various sources, and then distributes the cocaine throughout western Kentucky and northern Tennessee.
>
> 54. To date, the investigation of the ORGANIZATION has failed to conclusively identify all of the conspirators, including all sources of supply, other couriers, distributors, or customers, or to define the full nature and scope of the ORGANIZATION. I believe that the interception authority sought herein is necessary to achieve these results. . . .
>
> 55. One of the primary goals of this investigation is to identify and prosecute the ORGANIZATION'S primary source(s) of supply and ultimately the ORGANIZATION leaders. This goal is likely only obtained through the interception of the **Target Telephone**.

These paragraphs plainly indicate that the "necessity" for the October 24 Wiretap also encompassed obtaining evidence of "the above described offenses," including possession with intent to distribute crack and conspiracy, the suspected "cocaine distribution organization," the identity of "all of the conspirators," and the "full nature and scope of the ORGANIZATION." Furthermore, the October 24 Affidavit requested that the interception continue "until other unknown co-conspirators and places of operation are identified, and the methods and full scope of the conspiracy are determined, or for a period of thirty days from the day on which the intercept is authorized."

### 2. *Minimization Post-November 13, 2008*

Allen also argues that the Government failed to sufficiently minimize because the last pertinent conversation on Target Telephone-1 occurred on November 13, 2008, but monitoring continued until November 24, 2008. Allen bases this argument upon the November 18

4

Affidavit's statement that "As of 11/13/08, the most recent 'pertinent' call between **Target Telephone-1** and (270) 498-9471 occurred on 11/13/08." As the Government notes, however, that affidavit was being prepared a few days before it was submitted to the Court, and the affiant was relying on the most recent calls available to him. The affiant did not state that the last pertinent communication occurred on November 13, 2008.

       3.      *Minimization Burden*

In his reply, Allen argues that the minimization issue should be addressed by way of a hearing even if necessity existed for continued interception of Target Telephone-1 after October 29 or November 18. He states that the Government bears the burden of showing proper minimization, and that it has not tendered such information. Before a court conducts an evidentiary hearing, however, "a defendant must make at least some initial showing of contested facts." *United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988); *see also United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986) ("The burden of production and persuasion rests on the person seeking to suppress evidence.").

Allen makes a general assertion that the Government did not properly minimize because "many of the recorded conversations appear to involve talk of going out to eat, a car wreck, and basketball games." Allen fails, however, to point to any specific examples. Furthermore, "[t]he statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *Scott*, 436 U.S. at 140. Like in this case, "when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Id.* In such circumstances, "it is

5

possible that many more of the conversations will be permissibly interceptible because they will involve one or more of the co-conspirators." *Id.*

Here, the affiant swore:

> All interceptions will be minimized in accordance with the minimization requirements of Chapter 119 of Title 18, United States Code, and all interceptions conducted pursuant to this Court's Order will terminate upon attainment of the authorized objectives or, in any event, at the end of thirty days after the Order is entered. Monitoring of conversations will terminate immediately when it is determined the conversation is unrelated to communications subject to interception under Chapter 119 of Title 18, United States Code. Interception will be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the **Target Subjects** or any of their confederates, when identified, are participants in the conversation, unless it is determined during the portion of the conversation already overheard that the conversation is criminal in nature.

There is no evidence that the Government deviated from these minimization standards.

In sum, the Court finds that Allen's main argument that the Government failed to minimize interceptions after October 29 or November 13 without merit. Allen has also failed to provide the Court with any specific evidence or contested facts to warrant a suppression hearing.

**B.     Probable Cause**

Allen also argues that the October 24 Affidavit failed to establish probable cause for continued recording after the Government discovered Williams's new phone number on October 29, 2008. As explained *supra*, this argument, premised on the proposition that the only objective of the October 24 Wiretap was to identify Williams's new phone number, is without merit.

**C.     Sealing**

Allen's final argument for suppression is that the Government violated the statute's sealing requirement. *See* 18 U.S.C. § 2518(8)(a) ("Immediately upon the expiration of the period

6

of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions."). A recording of an intercepted conversation must be sealed "within one or two days" upon expiration of the authorizing order. *United States v. Wilkinson*, 53 F.3d 757, 759 (6th Cir. 1995).

Here, the October 24 Order states that monitoring must terminate "upon the attainment of the authorized objectives, or, in any event, at the end of thirty (30) days, measured from the day on which the investigative or law enforcement officers first begin to conduct the interception under the Court's Order or ten (10) days after the order is entered, whichever is earlier." The October 24 Order expired on November 24, 2008, thirty days after it was entered. The recordings were ordered sealed on November 25, 2008, the following day. Therefore, the Government did not violate the sealing requirement.

The Government has also shown, in response to Allen's argument, that the chain of custody was not broken by sending the magnetic optical disc containing the surveillance recordings from Detroit, Michigan, where it was made, to Madisonville, Kentucky via Federal Express. Special Agent Atkins verified that the disc arrived in a heat-sealed DEA evidence bag, and that can only be played, modified, or otherwise utilized with compatible master equipment operated by DEA Field Offices.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress Wiretap Evidence and Motion for Suppression Hearing (DN 328) is DENIED.